UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ANN GOVE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Docket no. 1:11-cv-160-GZS |
| | ) |
| CAREER SYSTEMS DEVELOPMENT CORP., | ) |
| | ) |
| Defendant. | ) |

ORDER ON DEFENDANT'S MOTION TO DISMISS OR STAY, AND MOTION TO COMPEL ARBITRATION

Plaintiff Ann Gove filed this action alleging that she was not hired for a job with Defendant Career Systems Development Corporation ("CSD") because she was pregnant, in violation of the Maine Human Rights Act, 5 M.R.S.A. § 4551 et seq. and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq. Now before the Court is Defendant's Motion to Dismiss or Stay, and Motion to Compel Arbitration (Docket # 5). As explained herein, the Court DENIES the Motion.

I.   STANDARD OF REVIEW

Under Rule 12(b)(1), a party may move to dismiss a case for lack of subject matter jurisdiction. See, e.g., Am. Fiber & Finishing, Inc. v. Tyco Healthcare Group, LP, 362 F.3d 136, 138 (1st Cir. 2004) ("Federal courts are courts of limited jurisdiction. In the absence of jurisdiction, a court is powerless to act."); see also Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). After the Court has determined that it has jurisdiction, it turns to the question of the sufficiency of the Complaint. Under Rule 12(b)(6), the Court must determine whether the

complaint, when taken in the light most favorable to the plaintiff, contains sufficient facts to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, — U.S. —, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)).

Without argument or support, Defendant asks that the Court dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) & (6). In this case, it is clear that the Court has subject matter jurisdiction and that Plaintiff's Complaint contains sufficient facts to state a claim for relief that is plausible on its face. Accordingly, Defendant's Motion to Dismiss is DENIED. Alternatively, Defendant asks that the Court stay this case and compel arbitration of Plaintiff's Claims pursuant to the Federal Arbitration Act, 9 U.S.C. § 4.

## II. FACTS

In May 2008, Plaintiff Ann Gove was employed as a Wellness Secretary by the Training and Development Corporation ("TDC"). (See Complaint (Docket # 1) ¶ 8.) At that time, TDC held a contract to provide services to Loring Jobs Corps ("Loring"). (Id.) Pursuant to that contract, Gove began working at Loring on May 28, 2008. (Id.) Nearly a year later, in early April 2009, TDC lost its contract with Loring to another company—CSD—and TDC employees were informed that CSD would be taking over from TDC starting May 1, 2009. (Id. ¶ 9.) During the period of transition from TDC to CSD between April 3 and May 1, 2009, CSD officials held meetings and conducted interviews with TDC employees interested in continuing to work at Loring. (Id.) On April 8, 2009, Gove submitted an online employment application in hopes of retaining her position, which was known in CSD's parlance as a Medical Clerk. (Id. ¶ 10; Docket # 5-1, p. 4.) Gove's employment application referenced CSD's Dispute Resolution and Arbitration Policy and stated that "submission of this Employment Application constitutes your agreement that the procedure set forth in the Arbitration Agreement will also be used to

resolve all pre-employment disputes." (Docket # 5-1, p. 4.) CSD's arbitration agreement was not attached to Gove's employment application; rather, Gove's employment application stated that a "copy of that procedure is on display in our employment office and a copy [of the] Arbitration Agreement setting forth that procedure will be provided to you." (Id.)

On April 21, 2009, Gove was interviewed for a position with CSD. (Compl. ¶ 10.) At that time, Gove was visibly pregnant and due to deliver on May 30, 2009. (Id.) During her interview, Gove was asked, "How much longer do you have?" and whether she had other children. (Id. ¶ 11.) Gove responded that she was due in five weeks and that she had a seven year old son. (Id.) CSD did not select Gove for employment, although CSD continued to have a need for a Medical Clerk and continued to advertise the position after informing Gove that she had not been selected. (Id. ¶ 12.)

On April 18, 2011, Gove filed her Complaint, alleging that CSD's failure to hire her was due to Gove's sex and her pregnancy, in violation of the Maine Human Rights Act, 5 M.R.S.A. § 4551 et seq. and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq. On June 17, 2011, Defendant filed its Motion to Dismiss or Stay, and Motion to Compel Arbitration. (Docket # 5.) The Motion was accompanied by Gove's Employment Application (Docket # 5-1) (hereinafter "Gove Application" or "Employment Application") and CSD's Dispute Resolution and Arbitration Policy (Docket # 5-2) (hereinafter "Arbitration Agreement").

### III. DISCUSSION

Defendant contends that under the Federal Arbitration Act, 9 U.S.C. § 4, the Court should compel Gove to arbitrate her employment discrimination claims because the Employment Application Gove submitted to CSD required that Gove resolve her claims under the terms of CSD's Arbitration Agreement. The Arbitration Agreement, Defendant asserts, must be read to

3

include Gove's claims because the Agreement specifically states that it covers "Title VII [and] … all similar state law[]" employment discrimination claims. (See Arbitration Agreement at 7.) In response, Plaintiff asserts that the Employment Application is ambiguous as to whether it compels arbitration of employment discrimination claims brought by an applicant who was never hired and never became a CSD employee. The ambiguous language in the Employment Application, Plaintiff argues, should be construed against the Defendant because Defendant drafted the Application. Under this construction, Plaintiff asserts that the Employment Application evinces no agreement between the parties to arbitrate Plaintiff's claims under CSD's Arbitration Agreement.[1]

### A. Law Governing Arbitration Agreements

Pursuant to Section 3 of the Federal Arbitration Act, the Court's consideration of a motion to compel arbitration involves the determination of (1) whether there is an agreement to arbitrate, (2) whether the dispute in question falls within the scope of that arbitration agreement, and (3) whether the party seeking arbitration has waived the right to compel arbitration. See Combined Energies v. CCI, Inc., 514 F.3d 168, 171 (1st Cir. 2008) (quoting Bangor Hydro-Electric Co. v. New Eng. Tel. & Tel. Co., 62 F. Supp. 2d 152, 155-56 (D. Me. 1999). Questions of arbitrability must be addressed with a "healthy regard" for the federal policy favoring arbitration. See Unionmutual Stock Life Ins. Co. of Am. v. Beneficial Life Ins. Co., 774 F.2d 524, 528 (1st Cir. 1998) (internal citation omitted); see also V.I.P., Inc. v. First Tree Dev. Ltd.

---

[1] Plaintiff also presents procedural objections to the Defendant's Motion arguing that the attachment of two exhibits (the Gove Application and the Arbitration Agreement) violated Local Rule 7(a) and that these attachments require conversion to a motion for summary judgment. In the Court's view, these procedural objections are without merit. It does not appear that the authenticity of the attached documents is in question. The First Circuit permits certain documents to be attached to motions to dismiss, including documents whose authenticity is not in dispute; official public records; documents central to the plaintiff's claims; or documents sufficiently referred to in the complaint. See Biddeford Internet Corp. v. Verizon New Eng. Inc., 456 F. Supp. 2d 165, 169 (D. Me. 2006) (internal citations omitted). Accordingly, Defendant was permitted to attach the Gove Application and the Arbitration Agreement to its Motion without converting the Motion into a motion for summary judgment. In any event, Plaintiff's procedural objection is moot in light of the Court's denial of the Motion to Dismiss based on Plaintiff's substantive objections.

Liab. Co., 770 A.2d 95, 96 (Me. 2001) ("Maine has a broad presumption favoring substantive arbitrability") (internal citation omitted). "However, arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."[2] Szillery v. Career Sys. Dev. Corp., et al., No. CV-08-62, 2008 WL 2789492, at *4 (D. Me. July 17, 2008) (quoting Large v. Conseco Fin. Servicing Corp., 292 F.3d 49, 52 (1st Cir. 2002).

"Whether a party agreed to arbitrate a particular dispute is an issue for judicial determination to be decided as a matter of contract." Johnson v. Circuit City Stores, Inc., 148 F.3d 373, 377 (4th Cir. 1998) (citing AT&T Techs., Inc. v. Comms. Workers of Am., 475 U.S. 643, 648-49 (1986)). In its decision, the Court should apply "ordinary state law principles that govern the formation of contracts." See Pelletier v. Yellow Trans., Inc., 503 F. Supp. 2d 397, 401 (D. Me. 2007) (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). Under ordinary Maine contract principles, an "agreement is to be interpreted to effect the parties' intentions as reflected in the written instrument, construed with regard to subject matter, motive, and purpose of the agreement, as well as the object to be accomplished." Biddeford Internet Corp., 456 F. Supp. 2d at 171-72 (quoting V.I.P., Inc., 770 A.2d at 96 (internal citation omitted)). The broad presumption in favor of arbitrability requires that the Court determine (1) whether there is a valid agreement to arbitrate, and (2) whether the dispute in question falls within the scope of the arbitration agreement. See Intergen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003) ("A party who attempts to compel arbitration must show that a valid agreement to arbitrate

---

[2] Because Gove brings a claim under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., the First Circuit requires an additional inquiry as to whether an agreement to arbitrate would be appropriate under the particular federal statutory framework. See Skirchak v. Dynamics Research Corp., 508 F.3d 49, 58-59 (1st Cir. 2007). The First Circuit has determined that Title VII of the Civil Rights Act does not prohibit pre-dispute arbitration agreements. See Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 170 F.3d 1, 7-8 (1st Cir. 1999). Accordingly, as long as Plaintiff has made an appropriate waiver of a judicial forum, there is no prohibition against compelling the arbitration of employment discrimination claims in accordance with the terms of the parties' agreement, so long as the parties have entered into a valid agreement to arbitrate.

exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope."); see also V.I.P., Inc., 770 A.2d at 96.

### B.  Gove Employment Application

The issue of whether the Gove Application constitutes a valid, unambiguous agreement to arbitrate Gove's employment discrimination claims is a question of law for the Court.  See Pelletier, 503 F. Supp. 2d at 403 (citing Portland Valve, Inc. v. Rockwood Sys. Corp., 460 A.2d 1383, 1387 (Me. 1983).  Maine courts have recognized that "ambiguities in a document are construed against its drafter."  See, e.g., Barrett v. McDonald Investments, Inc., et al., 870 A.2d 146, 150 (Me. 2005).  The purpose of this "bedrock rule" is to give effect to the intention of the parties.  Id. ("It is presumed that [the drafter] will not leave undeclared that which he would claim as his right under the agreement….") (internal citation omitted).  This rationale is particularly compelling in contractual situations where one party has little or no bargaining power, as is the case here.  See id. ("Where a standard-form, printed contract is submitted to the other on a 'take it or leave it' basis, upon equitable principles the provisions of the contract are generally construed to meet the reasonable expectations of the party in the inferior bargaining position….") (internal citations omitted).  In relevant part, the Employment Application Gove submitted to CSD states:

> CSD also believes that if there is any dispute between you and CSD with respect to any issue prior to your employment, which arises out of the employment process, that it should be resolved in accord with the [Arbitration Agreement] adopted by CSD for its employees.  Therefore, your submission of this Employment Application constitutes your agreement that the procedure set forth in the Arbitration Agreement will also be used to resolve all pre-employment disputes.  A copy of that procedure is on display in our employment office and a copy [of the] Arbitration Agreement setting forth that procedure will be provided to you.

> If you have any questions regarding this statement and the Arbitration Agreement, please ask a CSD representative before acknowledging, because by acknowledging, you acknowledge that you have received a copy of the Arbitration Agreement and agree to its terms. Do not check the Accept box below until you have read this statement.

(Gove Application at 4.)

The Gove Application repeatedly refers to "employment", the "employment process", and "its employees", suggesting that the Arbitration Agreement applies if the applicant is hired and becomes a CSD employee. See id. ("any dispute between you and CSD with respect to any issue prior to your employment, which arises out of the employment process, … should be resolved in accord with the [Arbitration Agreement] adopted by CSD for its employees.") (emphasis added). By its express language, the clause contemplates that the Arbitration Agreement has been "adopted by CSD for its employees"; therefore, the Gove Application is ambiguous as to whether it applies to job applicants who do not receive an employment offer.

The second sentence in the above-cited excerpt presents an additional ambiguity. It states that submission of an employment application "constitutes [an applicant's] agreement that the procedure set forth in the Arbitration Agreement will also be used to resolve all pre-employment disputes." Id. (emphasis added). The sentence is drafted to suggest that the Arbitration Agreement applies only to applicants who later become employees. Were the sentence to unambiguously encompass applicants not eventually hired, it would have included specific language incorporating such applicants. See Johnson v. Circuit City Stores, Inc., 148 F.3d 373, 374 (4th Cir. 1998) (arbitration agreement covered claims of applicant not hired because the arbitration agreement, which applicant signed as part of her application, stated that applicant

7

would be required to arbitrate all employment-related claims "whether or not I become employed"). Indeed, the Gove Application is fraught with ambiguity.[3]

Furthermore, CSD presented Gove with a standard-form employment application on a "take it or leave it" basis. CSD enjoyed all of the advantages, not only in choosing the words of the application, but also in rejecting any changes. Under Maine law, this imbalance provides an additional rationale for interpreting any ambiguities in the Gove Application against the Defendant. See Barrett, 870 A.2d at 150-51. Accordingly, the Court holds that the Gove Application does not require Plaintiff—who was not hired and who did not become a CSD employee—to arbitrate her employment discrimination claims under Defendant's Arbitration Agreement.

Because the Court rules that there is no valid agreement between the parties to arbitrate Plaintiff's claims, the Court need not reach the question of whether Plaintiff's claims fall within the scope of Defendant's Arbitration Agreement. Likewise, the Court need not address the parties' arguments as to whether the Gove Application is a valid agreement supported by sufficient consideration, or whether CSD waived any right to have this case decided by an arbitrator. Rather, based on the Court's initial conclusion that the Gove Application does not require arbitration of claims by applicants who do not become CSD employees, Defendant's Motion to Dismiss or Stay, and Motion to Compel Arbitration must be DENIED.

---

[3] Given the ambiguity in the Gove Application, Plaintiff suggests that the Court turn to CSD's Arbitration Agreement for insight into whether it covers a rejected applicant in addition to an applicant who was hired and became an employee. Plaintiff asserts that the Arbitration Agreement covers only CSD employees—and not applicants who are denied employment. (See Arbitration Agreement at 1 (stating that "[t]his policy is applicable to all [of CSD] and their employees" and the "purpose of this policy is to provide employees with a fair and equitable dispute resolution procedure") (emphasis added)). Based on the Court's review of the Arbitration Agreement, it is clear that the Arbitration Agreement applies only to an employee—and not to a non-employee such as Gove.

## IV.     CONCLUSION

Accordingly, Defendant's Motion to Dismiss or Stay, and Motion to Compel Arbitration (Docket # 5) is hereby DENIED in so far as it seeks to dismiss or stay this action and compel arbitration of Plaintiff's claims.

SO ORDERED.

                                                 /s/ George Z. Singal
                                                 United States District Judge

Dated this 9th day of November, 2011.